IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MONICA CASTRO, For Herself §
and as Next Friend of R.M.G., §
a minor child §
    *Plaintiffs*, §
                                                   §     C.A. No. _____
         v. §
                              §
THE UNITED STATES OF AMERICA, §
    *Defendant* §

## COMPLAINT

1.     This is a civil action for monetary damages and injunctive relief brought under the Fourth, Fifth and Tenth Amendments to the Constitution of the United States, and the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*. Plaintiff Monica Castro, for herself and as Next Friend of R.M.G., brings this action against Defendant United States of America, seeking redress for violations of Plaintiffs' rights under the Fourth, Fifth and Tenth Amendments to the U. S. Constitution and resulting claims arising from those violations.

### Jurisdiction and Venue

2.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*.

3.     Venue is proper in the United States District Court for the Southern District of Texas because Plaintiff resides in this judicial district and no real property is involved in the action. 28 U.S.C. § 1402(b).

1

## Exhaustion of Administrative Remedies

4. Plaintiffs presented timely administrative claims with the Department of Homeland Security, Customs and Border Protection, pursuant to 28 U.S.C. § 2675(a). Plaintiffs' administrative claims were received by the United States on June 1, 2005.

5. The United States has neither approved nor denied the claims, and more than six months has elapsed since the United States' receipt of the claims. Plaintiffs' suit is timely filed pursuant to 28 U.S.C. § 2675(a).

## Parties

6. Plaintiff Monica Castro is a U.S. citizen currently residing in Corpus Christi, Nueces County, Texas. At the time of the incidents giving rise to this suit, she was a resident of Shallowater, Lubbock County, Texas.

7. Plaintiff Castro appears in this lawsuit as both a plaintiff in her individual capacity and as Next Friend for her daughter, R.M.G., a minor child. At the time of the incidents giving rise to this suit, Plaintiff R.M.G. was a resident of Shallowater, Lubbock County, Texas. Her current residence is unknown.

8. Plaintiff Castro has the authority to act as Next Friend for Plaintiff R.M.G. pursuant to Rule 17(c) of the Federal Rules of Civil Procedure.

9. Defendant United States of America is a sovereign nation and exists under the Constitution of the United States of America and the laws enacted by the United States Congress. Customs and Border Protection is, and at all times relevant to this lawsuit was, an agency of the Department of Homeland Security, organized and existing under the laws of the United States.

**Statement of Facts**

10. Plaintiff R.M.G. is a three-year-old U.S. citizen. She is the daughter of Plaintiff Monica Castro, a U.S. citizen, and of Omar Gallardo, a citizen of Mexico. R.M.G. was born in Lubbock County, Texas on December 4, 2002, and was days short of her first birthday at the time the events giving rise to this action occurred.

11. On December 1, 2003, Plaintiff Monica Castro went in person to the U.S. Customs and Border Inspection station in Lubbock, Texas and informed U.S. Border Patrol Officer Manuel Sanchez that her common-law husband, Omar Gallardo, had taken their child, R.M.G.. She informed Officer Sanchez that Omar Gallardo was present in the United States illegally and asked if U.S. Customs and Border Inspection would deliver R.M.G., a U.S. citizen, to her if Omar Gallardo were apprehended.

12. At that time, Officer Sanchez presented Plaintiff Castro with copies of documents bearing Omar Gallardo's photograph that indicated he was wanted in connection with a homicide in Amarillo, Texas. Officer Sanchez asked Plaintiff Castro if she had any information regarding Mr. Gallardo's involvement in said homicide. Plaintiff Castro responded that she did not know Mr. Gallardo when he lived in Amarillo, had no knowledge or information about the homicide, and was there only to seek assistance in recovering her child.

13. Officer Sanchez informed Plaintiff Castro that Mr. Gallardo would have the right to take the child to the Border Patrol station with him if he were apprehended, but that Officer Sanchez would not allow Mr. Gallardo to take the child to Mexico if he were deported because Officer Sanchez knew of the child's U.S. citizenship status.

14. Relying on the representations made by Officer Sanchez, Plaintiff Castro informed Officer Sanchez where the Border Patrol could locate Mr. Gallardo.

15. Plaintiff Castro contacted Officer Sanchez the following day, December 2, 2003, to enquire as to whether Mr. Gallardo had been detained and whether the U.S. Customs and Border Inspection had possession of her daughter, Rosa Maria. Officer Sanchez informed Plaintiff Castro that the Border Patrol would not detain Mr. Gallardo that day.

16. At approximately 7:30 a.m. on the morning of December 3, 2003, Plaintiff Castro observed Border Patrol agents apprehending several people at her former residence, including Mr. Gallardo and Plaintiff R.M.G.. When, later that same morning, Plaintiff Castro contacted Officer Sanchez to tell him she was coming to the Lubbock station to pick up her infant daughter, Officer Sanchez replied that he would not release the child and that Plaintiff R.M.G. would be deported to Mexico with her father.

17. Plaintiff Castro, along with her mother, Cendy Castro, then went in person to the Lubbock Border Patrol station and asked to speak with Officer Sanchez.

18. Plaintiff Castro again asked to have her infant daughter delivered to her, but was told repeatedly by Officer Sanchez that he would not deliver her child to her because Omar Gallardo said he did not want Officer Sanchez to do so.

19. During that time, two detectives, who Plaintiff Castro believes were from Amarillo, Texas, approached her. The detectives asked Plaintiff Castro questions regarding the Amarillo homicide with which Omar Gallardo was allegedly involved.

20. After informing them that she knew nothing of Mr. Gallardo's activities in Amarillo, she asked the detectives for assistance in obtaining possession of her daughter.

4

The detectives replied that they had nothing to do with deportation proceedings, and could not assist her.

21. Plaintiff Castro could hear her infant daughter crying and pleaded with Border Patrol officials to let her see her baby, but was not allowed to do so. Other Border Patrol officials, including Officer Sanchez's supervisor, were present but provided no assistance. Plaintiff Castro asked when her child would be deported, to which Border Patrol officials told her that Plaintiff R.M.G. would be boarded on a bus to Mexico by 3:15 p.m. that same day.

22. Plaintiff Castro then left the Border Patrol station to work with an attorney to obtain emergency custody orders. When they arrived at the courthouse, the judge was not there. Her attorney called the Border Patrol station to enquire as to the status of the U.S. citizen child, and was informed that she had already been deported, less than 12 hours after being taken into custody by the Border Patrol.

23. Plaintiff Castro has not seen or heard of her infant daughter since December 3, 2003. The only information she has as to her daughter's whereabouts is that Plaintiff R.M.G. was deported to Ciudad Juarez, Chihuahua, Mexico.

24. On May 12, 2005, the 28th District Court of Nueces County, Texas, issued a Final Decree of Divorce in the *Matter of the Marriage of Monica Castro v. Omar Gallardo*. Pursuant to that decree, Plaintiff Castro is named Sole Managing Conservator of the child, R.M.G., and Omar Gallardo has no right of access or possession to the child.

## First Cause of Action: Violation of Fourth Amendment Due Process as to Plaintiff R.M.G.

25. Plaintiffs repeat and re-allege each allegation contained in paragraphs 1 through 24 of this complaint.

26. At all times relevant to this action, inspectors or other personnel were acting in their official capacity under the authority of the U.S. Department of Homeland Security and U.S. Customs and Border Protection, and therefore, under the authority of Defendant United States of America.

27. Detention and deportation of a U.S. citizen without due process violated R.M.G.'s Fourth Amendment constitutional interest in remaining free from bodily seizure. Detention of Plaintiff R.M.G. was not due to an act of wrongdoing that would warrant detention, nor was detention based on an emergency. The United States did not and cannot show that seizure was necessary to protect Plaintiff R.M.G.'s health, safety and welfare; indeed, the United States placed her in imminent danger by deporting her with a man it knew was wanted in connection with a homicide.

28. The United States intentionally, maliciously, and recklessly violated R.M.G.'s right to due process guaranteed by the Fourth Amendment of the U.S. Constitution.

29. Because the United States acted in clear violation of well-settled law with regard to the standards for detention and deportation actions regarding U.S. citizens, of which a reasonable person would have been aware, it is not entitled to a good faith defense or official immunity defense.

30. The actions of the United States caused Plaintiff R.M.G. to suffer harm, including severe mental anguish and suffering, loss of companionship, and unknown physical and psychological damages, for which Plaintiff R.M.G. seeks monetary and injunctive relief.

## Second Cause of Action: Violation of Fifth Amendment Due Process as to Plaintiffs Monica Castro and R.M.G.

31. Plaintiffs repeat and re-allege each allegation contained in paragraphs 1 through 24 of this complaint.

32. At all times relevant to this action, inspectors or other personnel were acting in their official capacity under the authority of the U.S. Department of Homeland Security and U.S. Customs and Border Protection, and therefore, under the authority of Defendant United States of America.

33. The Fifth Amendment to the U.S. Constitution protects citizens from deprivation of life, liberty or property without due process of law. Rights appurtenant to familial relationships have long been held to be fundamental rights protected by the Fifth Amendment to the Constitution.

34. Despite the fact that Defendant United States professed to have knowledge of Plaintiff R.M.G.'s citizenship status and that it knew Plaintiff Castro was the child's mother, Defendant United States intentionally, maliciously, and recklessly violated Plaintiffs Castro's and R.M.G.'s right to due process guaranteed by the Fifth Amendment of the U.S. Constitution. Defendant United States failed to make adequate inquiries as to custody rights Omar Gallardo may have had, failed to adequately investigate and

consider risks associated with the child remaining in Omar Gallardo's possession, and failed to provide Plaintiff Castro the opportunity to be heard before permanently removing her daughter from her care, custody and control.

35. Acts and omissions by Defendant United States effectively severed the parent-child relationship between Plaintiff Castro and Plaintiff R.M.G., in violation of the Fifth Amendment.

36. Because the United States acted in clear violation of well-settled law with regard to the standards for detention and deportation actions regarding U.S. citizens, of which a reasonable person would have been aware, it is not entitled to a good faith defense or official immunity defense.

37. The actions or omissions of the United States caused Plaintiffs Castro and R.M.G. to suffer harm, including severe mental anguish and suffering, and loss of companionship, for which Plaintiffs Castro and R.M.G. seek monetary and injunctive relief.

## Third Cause of Action: Violation of Tenth Amendment as to Plaintiffs Monica Castro and R.M.G.

38. Plaintiffs repeat and re-allege each allegation contained in paragraphs 1 through 24 of this complaint.

39. At all times relevant to this action, inspectors or other personnel were acting in their official capacity under the authority of the U.S. Department of Homeland Security and U.S. Customs and Border Protection, and therefore, under the authority of Defendant United States of America.

8

40. The Tenth Amendment to the U.S. Constitution establishes that all matters not delegated to the federal government are reserved to the States. Family relationships, including custody determinations and enforcement, are exclusively state concerns.

41. Officer Sanchez and other Border Patrol employees refused to return Plaintiff R.M.G. to her mother, Plaintiff Castro. They refused to do so solely on the grounds that Omar Gallardo told them they could not. Effectively, Officer Sanchez and other Border Patrol employees determined Omar Gallardo had legal custody of Plaintiff R.M.G., even though the United States was never presented with a court order establishing custody, or even a birth certificate establishing parentage.

42. In making the determination that Omar Gallardo had a legal right to custody of Plaintiff R.M.G. sufficient to deport a U.S. citizen child instead of delivering her to a waiting U.S. citizen parent, Defendant United States violated Plaintiffs' rights under the Tenth Amendment. Defendant's determination of custody deprived Plaintiffs Castro and R.M.G. of their right to bring the matter of custody to a state court before Plaintiff R.M.G. was deported.

43. Defendant United States intentionally, maliciously, and recklessly violated Plaintiffs Castro's and R.M.G.'s right pursuant to the Tenth Amendment of the U.S. Constitution. Defendant United States assumed control over a matter reserved to the States by determining that Omar Gallardo had legal custody of Plaintiff R.M.G.

44. Because the United States acted in clear violation of well-settled law with regard to the standards for custody determination and enforcement, of which a reasonable person would have been aware, it is not entitled to a good faith defense or official immunity defense.

45.     The actions or omissions of the United States caused Plaintiffs Castro and R.M.G. to suffer harm, including severe mental anguish and suffering, and loss of companionship, for which Plaintiffs Castro and R.M.G. seek monetary and injunctive relief.

## Fourth Cause of Action: Federal Tort Claims Act – Negligence as to Plaintiffs Monica Castro and R.M.G.

46.     Plaintiffs repeat and re-allege each allegation contained in paragraphs 1 through 24 of this complaint.

47.     At all times relevant to this action, inspectors or other personnel were acting in their official capacity under the authority of the U.S. Department of Homeland Security and U.S. Customs and Border Protection, and therefore, under the authority of Defendant United States of America.

48.     The United States negligently failed to ascertain custody issues regarding the child, Plaintiff R.M.G. Further, the United States negligently failed to consider or determine the risk of permanent deprivation of custody and of potential harm to the health and welfare of the child.

49.     Defendant United States of America is liable for damages to Plaintiffs, in that the wrongful deportation of R.M.G. arose from the wrongful acts, neglect, callousness, unskillfulness, or default of Defendant, in that:

   a. Defendant United States of America failed to recognize R.M.G.'s claim to U.S. citizenship;

    b. Defendant United States intentionally misled Plaintiff Monica Castro that it would return her U.S. citizen child to her in exchange for information leading to the apprehension of Omar Gallardo, a person illegally present in the United States;

    c. Defendant United States knowingly and intentionally deported a U.S. citizen, R.M.G., while her mother, also a U.S. citizen, was present at the Lubbock Border Patrol station to take possession of her;

    d. Defendant United States of America deported a one-year old U.S. citizen child with a person of interest in a homicide case, even though a U.S.-citizen parent was present to take possession of the minor citizen child; and

    e. Defendant's wrongful acts, neglect, carelessness, unskillfulness, or default directly and proximately caused the wrongful deportation of a U.S. citizen minor child, which has separated mother and child since December 3, 2003.

50. Said actions and inactions of Defendant amount to grossly negligent conduct.

51. Defendant is not entitled to the defense of qualified immunity or official immunity herein, in that the actions of Defendant were not performed in good faith.

52. As a direct, probable, foreseeable, and proximate result of the United States' negligent and unlawful conduct and the improper practices of the U.S. Customs and Border Patrol, described above, Plaintiffs Monica Castro and R.M.G. suffered mental anguish and suffering, loss of companionship, and R.M.G. has suffered unknown

physical and psychological harm, for which Plaintiffs seek monetary relief pursuant to the Federal Tort Claims Act. 28 U.S.C. § 2671 *et seq.*

## Fifth Cause of Action: Federal Tort Claims Act - Intentional Infliction of Emotional Distress as to Plaintiffs Monica Castro and R.M.G.

53. Plaintiffs repeat and reallege each allegation contained in paragraphs 1 through 24 of this complaint.

54. At all times relevant to this action, inspectors or other personnel were acting in their official capacity under the authority of the U.S. Department of Homeland Security and U.S. Customs and Border Protection, and therefore, under the authority of Defendant United States of America.

55. The United States engaged in a pattern of extreme and outrageous conduct that caused Plaintiffs Castro and R.M.G. to suffer severe emotional distress, for which Plaintiffs seek relief from Defendant United States of America.

56. Officer Manuel Sanchez misled Plaintiff Castro regarding the return of her child, Plaintiff R.M.G., for the sole purpose of obtaining information regarding the location of an undocumented person present in the United States. Following Officer Sanchez's deception, Officer Sanchez and other officials of U.S. Customs and Border Protection engaged in additional outrageous conduct, including denying Plaintiff Castro the ability to see her infant child, even though the child could be heard crying, and deporting a U.S. citizen child less than 12 hours after taking her into custody, effectively foreclosing any ability for Plaintiff Castro to assert her rights as a parent of the minor child.

12

57. Defendant is not entitled to the defense of qualified immunity or official immunity herein, in that the actions of Defendant were not performed in good faith.

58. Defendant United States' extreme and outrageous conduct caused Plaintiffs Castro and R.M.G. to suffer mental and emotional anguish and suffering, for which Plaintiffs seek monetary relief for pursuant to the Federal Tort Claims Act. 28 U.S.C. § 2671 *et seq*.

### Sixth Cause of Action: Federal Tort Claims Act – False Imprisonment as to R.M.G.

59. Plaintiffs repeat and reallege each allegation contained in paragraphs 1 through 23 of this complaint.

60. At all times relevant to this action, inspectors or other personnel were acting in their official capacity under the authority of the U.S. Department of Homeland Security and U.S. Customs and Border Protection, and therefore, under the authority of Defendant United States of America.

61. Defendant United States willfully detained R.M.G. without her consent or the consent of her U.S. citizen parent, and the detention was without legal authority or justification.

62. From the moment Defendant United States knew or should have known that R.M.G. was a U.S. citizen and that a U.S. citizen parent was present to take possession of her and did not release her, Defendant United States had no legal authority or justification to continue its detention of the child.

63. Defendant is not entitled to the defense of qualified immunity or official immunity herein, in that the actions of Defendant were not performed in good faith.

64.     The United States' false imprisonment of the child caused Plaintiff R.M.G. to suffer mental anguish and suffering, loss of companionship, and unknown physical and psychological harm, for which Plaintiffs seek monetary relief pursuant to the Federal Tort Claims Act. 28 U.S.C. § 2671 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Monica Castro for herself and as Next Friend of R.M.G. prays that, upon final trial, this Court provide the following relief:

a.     Award Plaintiff Monica Castro monetary damages in the amount of Two Million, Five Hundred Thousand dollars ($2,500,000.00) against Defendant United States of America for violation of her Fifth and Tenth Amendment constitutional rights and for claims arising under the Federal Torts Claim Act;

b.     Award Plaintiff R.M.G. monetary damages in the amount of Two Million, Five Hundred Thousand dollars ($2,500,000.00) against Defendant United States of America for violation of her Fourth, Fifth and Tenth Amendment constitutional rights and for claims arising under the Federal Torts Claim Act;

c.     As injunctive relief, order Defendant United States of America to immediately take all necessary measures to locate Plaintiff R.M.G. until she is found; to communicate regularly with Plaintiff Castro regarding the status of Defendant's efforts to locate and return Plaintiff R.M.G. to her; to return Plaintiff R.M.G. to her mother, Plaintiff Monica Castro; and, to assume all costs related to locating and delivering Plaintiff R.M.G. to Plaintiff Castro;

d.  Award Plaintiffs post-judgment interest, as permitted by law;

e.  Award Plaintiffs costs of court, as permitted by law; and

f.  Award Plaintiffs' any other relief this Court may deem just and proper at law or in equity.

Respectfully Submitted,

TEXAS RIOGRANDE LEGAL AID, INC.
316 S. Closner
Edinburg, TX 78539
Tel: (956) 383-5673
Fax: (956) 383-4688

By: /s/ Susan L. Watson
Susan L. Watson (Attorney in Charge)
Federal Bar No. 567690
Texas Bar No. 24028115

/s/ Celestino Gallegos
Celestino Gallegos
Federal Bar No. 565173
Texas Bar No. 24040942